

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00207-CR

_____

VANDAMME JEANTY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 158th District Court
Denton County, Texas
Trial Court No. F16-887-158

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant Vandamme Jeanty, having been convicted by a jury of state-jail-felony fraudulent use or possession of identifying information and sentenced to 18 months' incarceration, appeals the trial court's denial of his request for bail pending appeal. Because we cannot conclude that the trial court erred by denying his request, we affirm the trial court's order.

## Background[1]

### I. The underlying trial and conviction

After a jury trial, Jeanty was convicted of fraudulently obtaining or possessing Mary Stella's identifying information. At trial, Stella, a Florida attorney, recognized Jeanty as having "lurk[ed] and follow[ed]" her during Stella's representation of Bank of America in litigation against Jeanty's acquaintance, Carline Merisier. Stella testified that Jeanty had been "mentioned prominently" throughout Merisier's suit against Bank of America.

Merisier is also involved in the instant case. She and Jeanty were accused in the instant proceedings of using Stella's information to apply online for and successfully open a $20,000 line of credit with Nebraska Furniture Mart. The pair was arrested after they used that line of credit to purchase a high-end vacuum and to attempt to

---

[1]We granted Jeanty's request for dual representation and to file his pro se brief. However, his pro se brief refers to many facts that are outside the record in this case or in his direct appeal. We cannot and will not consider those outside-the-record facts, and we limit our review to the record that is properly before us. *See, e.g.*, *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004).

purchase two expensive televisions. At trial, Stella described how her credit score had been harmed after they stole her identity; she testified that her credit report listed accounts, including the Nebraska Furniture Mart account, and addresses that did not belong to her.

## II. Testimony at the habeas corpus hearing

Jeanty is a Haitian immigrant and, at the time of the bail hearing in this case, was a legal resident of the United States, according to his cousin Flobrenne Joseph-Spaulding. Joseph-Spaulding testified at the hearing that she and Jeanty resided in a Fort Worth apartment and that Jeanty had been self-employed prior to his fraud conviction, but she could not explain what his work was other than vaguely describing it as performing "a lot of research in different fields" for other people. She refused to name any of his clients and claimed that such information was confidential, and she did not seem to know how he was paid or how often. She denied that his research involved fraud against other individuals, disagreed with the jury's identity-theft verdict against him, and averred that his income came from "a legal and legitimate source."

Joseph-Spaulding also testified that she could obtain a bond up to $40,000 and that she would ensure that Jeanty met all bond conditions.

In opposition to Jeanty's request for bail pending appeal, the State offered two exhibits without any objection from Jeanty, and both were admitted by the trial court. The first exhibit consisted of records reflecting Jeanty's 2002 federal conviction for voting in the 2000 presidential election without proper citizenship credentials. Jeanty

3

was sentenced to three years' probation for the conviction, which was revoked in 2005. According to the second exhibit, a printout of a 2007 Miami Herald article about the "unravel[ling]" of Jeanty's life after his 2002 conviction, his probation was revoked because he had been arrested and charged with carrying a concealed firearm (a violation of his probation conditions) and loitering and prowling, and Jeanty received a one-year prison sentence. Also according to the article, he was detained by federal Immigration and Customs Enforcement (ICE) officials upon release from prison but was released on bail; however, Jeanty did not appear at his first immigration hearing and was ordered deported. The article ended by reporting that Jeanty had turned himself in to ICE officials and averred that he had missed the hearing because his father had been violently murdered in Haiti the night before the hearing and Jeanty had been comforting relatives.

In addition to its two exhibits, the State requested that the trial court take judicial notice of the evidence submitted during the trial of the case and the contents of the trial court's file, and it did. The trial court then stated that, having taken judicial notice of the file and reviewed the State's exhibits, it had "heard evidence creating significant concern by the Court of [Jeanty]'s further appearance." It continued,

> Additionally, the Court believes [Jeanty] would commit further crimes of fraud and theft. The entirety of the evidence in this cause is of concern from the choice of victim to the breadth of actions. This Defendant has no visible means of support. Bond is denied.

**Discussion**

We review the denial of a request for bail pending appeal for an abuse of the broad discretion afforded the trial court. Tex. Code Crim. Proc. Ann. art. 44.04(b), (c).[2] The primary objective of an appeal bond is to secure the appellant's apprehension if his conviction is subsequently affirmed. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981). In weighing bail pending appeal, the trial court should consider factors including the length of the sentence; the nature of the offense; the appellant's work record, family ties, and length of residency; his ability to make bail; his prior criminal record and conformity with previous bond conditions; and any aggravating factors in the offense. *Id.* at 849–50. Additionally, the trial court may deny bail altogether "if there . . . exists good cause to believe that the defendant would not appear when his conviction became final or is likely to commit another offense while on bail." Tex. Code Crim. Proc. Ann. art. 44.04(c).

Jeanty does not face a drastically long sentence; he is sentenced to 18 months' incarceration. That, his Fort Worth residency, and Joseph-Spaulding's testimony that she could pay up to $40,000 for his release on bail are factors that might have weighed in Jeanty's favor in setting a bail amount. *See Rubac*, 611 S.W.2d at 849–50.

---

[2]In his motion for bail pending appeal and in the brief he voluntarily filed in this court, Jeanty seems to express that bail was mandatory in this case. Any such assertion is wrong. Bail pending appeal is mandatory in cases in which the defendant has been convicted of a misdemeanor offense. Tex. Code Crim. Proc. Ann. art. 44.04(a). Jeanty was convicted of a state-jail felony, so bail in his case is discretionary. *Id.* art. 44.04(b).

5

But in this case the trial court found good cause existed to believe that Jeanty might not appear when his conviction becomes final and that he might commit further crimes of fraud and theft. Its concerns about his reappearance are supported by the evidence of Jeanty's previous violation of probation conditions related to his illegal-voting conviction and his subsequent failure to appear at an ICE hearing. The trial court's concerns of Jeanty's propensity to commit further offenses on bail were based upon the evidence presented in his underlying criminal trial and the resulting identity-theft conviction, concerns that were certainly not allayed by Joseph-Spaulding's testimony that Jeanty made his income by "researching" things on the internet for other people whom she could not or would not identify.

Based on the record before us, we cannot conclude that the trial court abused its discretion by finding such good cause existed and denying Jeanty's request for bail. We therefore affirm the trial court's order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 28, 2022